UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BAUSCH & LOMB INCORPORATED,

          Plaintiff,

                                    08-CV-6260T
                                    **DECISION**
          v.                             **and ORDER**

LEXINGTON INSURANCE COMPANY,

          Defendant.

_____

## INTRODUCTION

Plaintiff Bausch & Lomb Incorporated, ("Bausch & Lomb" or "B & L") brings this action against defendant Lexington Insurance Company ("Lexington") seeking a declaration that Lexington is obligated to provide insurance coverage to Bausch & Lomb with respect to claims made against B & L by consumers for alleged injuries arising out of the use of Bausch & Lomb contact lens solutions. Bausch & Lomb claims that it purchased umbrella liability insurance policies ("the Lexington policies") from the defendant for yearly periods from January 1, 2004 through January 1, 2007, and that during this time, thousands of claims have been made against the company for alleged injuries arising from consumers' use of certain ReNu brand contact lens solutions. B & L contends that it has sought liability coverage from Lexington for these claims pursuant to the Lexington policies, as well as coverage for defense costs associated with these claims, but that Lexington has denied coverage for all but a portion of the claims.

According to B & L, Lexington has denied coverage because it has deemed each alleged injury sustained by users of B & L solutions as separate "occurrences" under the terms of the policy, and as a result, has agreed to provide coverage only when specified limits of liability have been met for each occurrence. Bausch and Lomb contends that Lexington has improperly characterized the injuries as arising from multiple occurrences, and in doing so, has ignored the portions of the Lexington Policies which, according to B & L, specifically provide for grouping of claims such as the claims brought against it. According to B & L, the grouping provisions of the Lexington policies require Lexington to treat the several injuries allegedly suffered by B & L's consumers as arising from a single occurrence.

for determination by the court are the parties' competing motions for summary judgment. The parties contend that there are no material issues of fact in dispute, and that the claims brought by B & L can be resolved as a matter of law based upon the interpretation of policy language disputed by the parties. Specifically, Lexington contends that the Lexington policies should be construed so as to provide that each alleged injury sustained by users of B & L's contact lens solutions be treated as a separate occurrence. According to Lexington, pursuant to such an interpretation, it would only be obligated to provide insurance coverage once certain liability thresholds (as stated in the

policies) have been met in each individual case. Lexington further contends that because those thresholds have not been reached, and are not likely to be reached, it is not obligated to provide a defense for every claim, and is not obligated to insure liability losses that do not reach the policy thresholds.

Bausch and Lomb contends that the policies should be construed so as to provide that all claims resulting from alleged injuries sustained as a result of using ReNu brand contact lens solutions constitute a single occurrence. B & L argues that if the claims are considered to be the result of a single occurrence, then B & L has met its liability thresholds, and Lexington is obligated to provide liability coverage and a legal defense against the claims.

For the reasons set forth below, I find that the claims brought by users of B & L's contact lens solutions for alleged injuries sustained as a result of the use of those solutions constitute separate occurrences under the terms of the Lexington policies, and as a result, Lexington is not obligated to insure B & L for losses arising from those claims, or defense costs arising from those claims, absent a showing that B & L has met the liability limits set forth in the policies.

## BACKGROUND

Plaintiff Bausch & Lomb is a manufacturer of eye care products including several different brands and varieties of contacts lens solutions. Among the contact lens solutions manufactured and sold

by B & L are three solutions known as ReNu MoistureLoc, ReNu
Multiplus Multi-Purpose Solution, and ReNu Multi Purpose Solution.
These three solutions are the subject of several products liability
claims ("the ReNU claims") brought by consumers who were allegedly
injured as a result of using the products.  In general, the
claimants contend that they were subjected to bacterial or fungal
infections in their eyes because the solutions either fostered or
failed to prevent such infections.  According to the defendants,
over 2000 claims have been made against the company, with the vast
majority of claims involving use of the ReNu MoistureLoc solution.

As a result of the claims made against the company, Bausch &
Lomb sought insurance coverage from Lexington pursuant to three
insurance policies that B&L had purchased from Lexington.  Bausch
& Lomb held three Commercial Umbrella Policies issued by Lexington,
for the periods January 1, 2004 to January 1, 2005, (the "2004
policy") January 1, 2005 to January 1, 2006, (the "2005 policy")
and January 1, 2006 to January 1, 2007, (the "2006 policy").  Each
of the policies provides a limit of $25 million of insurance
coverage for each occurrence and in the aggregate, and sits in
excess of retained limits specified in each of the policies.  The
retained limits for the 2004 and 2006 policies were $2 million per
occurrence, with a $4 million aggregate retained limit.  The 2005
policy contained a retained limit of $2 million per occurrence, and
a $2 million aggregate retained limit.  The 2004 and 2005 policies

also contained maintenance retention obligations of $100,000 per occurrence once the aggregate retained limits had been reached. The 2006 policy contained a maintenance retention obligation of $250,000 per occurrence. The policies also include, subject to limitations and conditions, a duty to defend Bausch & Lomb against claims for damages.

Upon Bausch & Lomb's submission to Lexington of a claim for coverage with respect to the ReNu claims, Lexington acknowledged coverage for the claims, but advised B & L that Lexington considered each individual claim against B & L to have arisen out of separate "occurrence" (as that term is defined in the policies) and therefore, Lexington would only be obligated to pay on behalf of B & L judgments or settlements in excess of the $4 million aggregate retained limits, subject to the maintenance retentions of $100,000 or $250,000 as applicable. Bausch & Lomb objected to Lexington's determination that the claims against it resulted from multiple occurrences, and asserts that the ReNu claims result from a single occurrence. Bausch & Lomb thus contends that Lexington is obligated to provide liability coverage and defense costs for each year in which the $2 million "per occurrence" limit is reached. After Lexington refused to provide such coverage, Bausch & Lomb brought the instant action seeking, <u>inter</u> <u>alia</u>, a declaration that it is entitled to the coverage it seeks.

**DISCUSSION**

I.   The Parties' Motions for Summary Judgment

        Rule 56(c) of the Federal Rules of Civil Procedure provides
that summary judgment "should be rendered if the pleadings, the
discovery and disclosure materials on file, and any affidavits show
that there is no genuine issue as to any material fact and that the
movant is entitled to judgment as a matter of law."  When
considering a motion for summary judgment, all genuinely disputed
facts must be resolved in favor of the party against whom summary
judgment is sought.  Scott v. Harris, 550 U.S. 372, 380 (2007).
If, after considering the evidence in the light most favorable to
the nonmoving party, the court finds that no rational jury could
find in favor of that party, a grant of summary judgment is
appropriate.  Scott, 550 U.S. at 380 (citing Matsushita Elec.
Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986).

        Lexington moves for summary judgment on grounds that there are
no material facts in dispute, and that as a matter of law, it is
entitled to judgment in its favor.  In support of its motion,
Lexington contends that because the alleged injuries suffered by
users of plaintiff's contact solutions are the result of several
occurrences, and not one single occurrence, it is not obligated to
provide a defense to Bausch & Lomb against claims for injuries from
those users, or to pay damages or judgments arising from those

claims that do not exceed liability limits set forth in the relevant insurance policies.

Bausch and Lomb cross-moves for summary judgment seeking a declaratory judgment that Lexington is obligated under the Lexington policies to both provide a defense against all ReNu claims, and pay damages claims or judgments that exceed the limits of liability set forth in those policies. Bausch and Lomb argues that because the Lexington policies contain an aggregating or grouping clause which specifically provides that multiple injuries from exposure to its products will be deemed to be a single occurrence, Lexington is obligated to defend Bausch & Lomb against all ReNu claims for damages allegedly resulting from the use of its products.

For the reasons set forth below, I find that the alleged injuries suffered by users of the plaintiff's contact lens solutions were the result of multiple occurrences that cannot be aggregated for purposes of insurance coverage under the Lexington policies. I therefore find that Lexington is not obligated to provide Bausch and Lomb with a defense to product liability claims arising out of the use of its contact lens solutions, and is not obligated to pay damages or judgments related to those claims absent a showing that the limits of liability have been exceeded for each occurrence, or that the aggregate limits have been met.

II.   Standard of Review

In determining the meaning of the terms used in the policies, the court must construe the contract terms "so as to give effect to the intention of the parties as expressed in the unequivocal language employed." Breed v. Ins. Co. of North America, 46 N.Y.2d 351, 355,(1978); Morgan Stanley Group, Inc. V. New Eng. Ins. Co., 225 F.3d 270, 275 (2nd Circ. 2000). Provided that the contract term at issue is unambiguous, interpretation of the contract language is a question of law for the court. Bourne v. Walt Disney Co., 68 F.3d 621 (2d Cir. 1995), cert. denied, 517 U.S. 1240 (1996). Moreover, the question of whether or not the contract language itself is ambiguous is also a matter of law to be decided by the court. Parks Real Estate Purchasing Group v. St. Paul Fire and Marine, 472 F.3d 33, 42  (2nd Cir., 2006); see also Mellon Bank, N.A. v. United Bank Corporation of New York, 31 F.3d 113, 115 (2nd Cir. 1994) (question of whether or not contract is ambiguous is a question of law). Accordingly, before defining the terms of a contract, the court must first determine whether or not the terms are ambiguous. If the terms are not ambiguous, the court may then define the terms in dispute.

A.   The Disputed Terms

At issue before the court is what constitutes an "occurrence" under the Lexington Policies, and whether or not certain occurrences involving multiple accidents may be aggregated and

treated as a single occurrence. Under the 2004 Policy, an occurrence is defined as:

> an accident, including continuous or repeated exposure to conditions, which results in Bodily Injury or Property Damage neither expected nor intended from the standpoint of the insured. All such exposure to substantially the same general conditions shall be considered as arising out of one Occurrence

See Commercial Umbrella Insurance Policy issued to Bausch & Lomb effective January 1, 2004 to January 1, 2005, Attached as Exhibit B to the Nov. 26, 2008 Affidavit of Andrew Houghton. Under the 2005 and 2006 policies, an occurrence is defined as:

> an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general harmful conditions shall be considered as arising out of one Occurrence.

See Commercial Umbrella Insurance Policy issued to Bausch and Lomb effective January 1, 2005 to January 1, 2006, and January 1, 2006 to January 1, 2007, Attached respectively as Exhibit C and D to the Nov. 26, 2008 Affidavit of Andrew Houghton. The parties agree that for purposes of this suit, the minor changes to the definition of "occurrence" from 2004 to 2005 do not have an effect on the meaning of the term. The parties further agree that the provisions providing that "[a]ll such exposure to substantially the same general conditions shall be considered as arising out of one Occurrence" and [a]ll such exposure to substantially the same

general harmful conditions shall be considered as arising out of one Occurrence" constitute "grouping" provisions which serve to group as a single occurrence accidents which might otherwise be treated as multiple occurrences.

B. The term "occurrence" as used in the Lexington Policies is not ambiguous, and therefore may be construed by the court as a matter of law.

The parties agree that the term "occurrence" as used in the policies, (along with the provisions regarding grouping of occurrences) is unambiguous. See Defendant's Memorandum of Law at p. 13 ("New York courts have repeatedly held that the term 'occurrence' is unambiguous and the issue of what constitutes an occurrence is a legal question for the court which may be determined on a motion for summary judgment."); Plaintiff's Memorandum of Law at p. 12-13 (the "grouping provision . . . unambiguously 'deems' all exposure to "substantially the same general harmful" conditions as a single occurrence.")(emphasis in the original.) The parties disagree, however, as to how the unambiguous language should be interpreted. Lexington contends that the policy language clearly evinces the parties' understanding that injuries such as those allegedly suffered by the users of plaintiff's contact lens solutions constitute several separate occurrences, and therefore, each occurrence is subject to the limitations provisions set forth in the policies. Bausch & Lomb, however, relying on the "grouping" provision of the policies at

issue, contends that all exposure to the companies' contact lens solutions constitutes a single occurrence.

Under New York law, which governs this dispute, courts have generally found that the term "occurrence" is unambiguous, and that determination of what constitutes an "occurrence" under an insurance policy is a legal question that may be decided on a motion for summary judgment. ExxonMobil Corp. v. Certain Underwriters at Lloyd's, London, 15 Misc.3d 1144(A) (N.Y. Sup. Ct., 2007)("The term 'occurrence' has repeatedly been determined to be unambiguous." citing Hartford Accident & Indemnity Co. V. Wesolowski, 305 N.E.2d 907, 909-910 (N.Y. 1973)). In this case, I find that the term "occurrence" is unambiguous, and, as set forth in the policies, is defined as an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in Bodily Injury or Property Damage neither expected nor intended from the standpoint of the insured.

Based on the unambiguous definition of the term occurrence, I find that plaintiff has failed to establish that the ReNu claims are the result of a single occurrence as that term is used in the Lexington policies. I further find that B & L has failed to establish that the grouping provisions of the Lexington policies apply to the ReNu claims. As a result, I find that B & L has failed to establish that the multiple occurrences which give rise

to the ReNu claims may be grouped and treated as a single
occurrence.

> III. Bausch & Lomb has failed to establish that the Renu
>      claims arise from a single occurrence, or from multiple
>      occurrences which may properly be grouped under the
>      <u>policies</u>.

To establish that it is entitled to maximum coverage under the
Lexington policies for claims arising out of use of its contact
lens solutions, Bausch and Lomb must establish that the ReNu claims
arose out of a single occurrence, or arose out of multiple
occurrences that may be grouped pursuant to the grouping provisions
of the Lexington policies. I find, however, that B & L has failed
to establish either claim.

> A. The ReNu Claims are not the result of a single
>    <u>occurrence</u>.

The Lexington polices identify the continuous or repeated
exposure to the same general harmful conditions as a specific type
of accident, and not as a type of independent occurrence. As a
result, to constitute an "occurrence" under the Lexington policies,
the continuous or repeated exposure to a harmful condition must
have been the result of an accident, i.e. an unintentional act.
See <u>Vermont Mut. Ins. Co. v. Malcolm</u>, 128 N.H. 521, 522-523, 517
A.2d 800, 802 (N.H., 1986) (Souter, J.)(where the term "occurrence"
is defined to include injurious exposure to continuing conditions,
"the injurious exposure must . . .itself be accidental in nature");
<u>Allstate Ins. Co. v. Belezos</u>, 744 F. Supp. 992, 996 (D. Or. 1990),

aff'd, 951 F.2d 358 (9th Cir. 1991) (where definition of occurrence includes "continuous exposure to conditions," proof of an accident causing the exposure is still required to establish that an occurrence took place);   2 Insurance Claims and Disputes§ 11:3 (Fifth Ed.) (Despite the fact that occurrence may be defined as including continuous or repeated exposure to conditions, "it does not eliminate the need for an accident.")(citations omitted).

An accident is "an event of an unfortunate character that take's place without one's foresight or expectation" Arthur A. Johnson Corp. V. Indemnity Ins. Co., 164 N.E.2d 704, 707 (N.Y. 1959).  In the instant case, Bausch and Lomb contends that some unknown deficiency in its products constituted the "accident" giving rise to an "occurrence" under the Lexington Policies.  See Plaintiff's Memorandum of Law at fn. 15 ("the alleged deficiency in MoistureLoc that led to eye injury . . . was certainly an accident.").

However, a product that is intentionally formulated, and intentionally manufactured as formulated, as were the solutions in this case, is not itself the "accident."  Rather, it is the exposure to the allegedly defective product (and not the manufacture, distribution, or sale of such a product) that constitutes the accident giving rise to liability.  "  See ExxonMobil Corp. v. Certain Underwriters at Lloyd's, London, 855 N.Y.S.2d 484 (App. Div. 1st Dep't 2008)(manufacture and sale of

allegedly defective product does not constitute a single occurrence, it is the individual use of the product resulting in injury that constitutes an "occurrence"). In this case, there is no allegation or evidence that the plaintiff's contact lens solutions were tainted by the accidental inclusion or exclusion of any ingredient, or unintended presence of a foreign substance, nor is there any allegation or evidence that the solutions were not manufactured as intended, and so there can be no claim of an accident in the manufacturing process itself. Accordingly, it is the exposure by consumers to the product that constitutes the "accident.

That it is the individual exposure to the product, and not the manufacture, distribution or sale of the product that constitutes the accident or occurrence is confirmed by application of New York's "unfortunate events" test. As stated by the New York State Court of Appeals in Appalachian Insurance Company v General Electric Company, 863 N.Y.S.2d 742, 748 (N.Y. 2007), "the term occurrence is synonymous with accident unless the parties include language in the policy indicating otherwise." Where the parties do not otherwise indicate, determination of what constitutes an accident or occurrence will be made by utilizing the "unfortunate events" standard set forth in Arthur A. Johnson Corp. v. Indemnity Ins. Co of North America, 164 N.E.2d 704. Appalachian, 863 N.Y.S.2d at 748 (because the parties did not use alternative

language in defining the term "occurrence" the unfortunate events test applied.") As stated by the court in Appalachian, the unfortunate events test is used to determine "whether a set of circumstances amounts to one accident or occurrence, or multiple accidents or occurrences . . . ." Appalachian, 863 N.Y.S.2d at 746. In applying the unfortunate events test, courts determine:

> whether there is a close temporal and spatial relationship between the incidents giving rise to injury or loss, and whether the incidents can be viewed as part of the same causal continuum, without intervening agents or factors. Common causation is pertinent once the incident-the fulcrum of our analysis-is identified, but the cause should not be conflated with the incident.

Appalachian, 863 N.Y.S.2d at 747. To identify the "incident" giving rise to the injury, the Appalachian court instructed that courts are to look at the specific incident giving rise to liability, and not to look to "some point further back in the causal chain." Appalachian, 863 N.Y.S.2d at 747. In applying the test in the Appalachian case, which involved individuals who, over the course of several years, were exposed to products containing asbestos, the court held that no "incident" occurred until the individuals were actually exposed to the asbestos. Appalachian, 863 N.Y.S.2d at 748. Specifically, the court held that "[b]efore the exposures occurred, there was only the potential that some unidentified claimant would someday be harmed by GE's alleged failure to warn." Appalachian, 863 N.Y.S.2d at 748. Because the

incident that gave rise to liability was the exposure to the product itself, there was no need to look to "some point further back in the causal chain" such as the manufacture, sale, or distribution of the product.

The Appellate Courts of New York have followed the analysis set forth in <u>Appalachian</u>, and have determined that when an individual allegedly suffers an injury as a result of exposure to a particular product, it is the actual exposure to the product itself that constitutes the incident giving rise to liability, and it is not some earlier event, such as the manufacture, sale, or delivery of the product, that is the accident or occurrence. <u>International Flavors and Fragrances, Inc. v. Royal Insurance Company of America</u>, 844 N.Y.S.2d 257, 262 (N.Y. App. Div. 2007)(shipment of the product which was alleged to have caused injury "presented only potential for injury; it was the exposure to diacetyl and other volatile compounds, though gradual and continuing over the course of years, that precipitated the actual harm, comprising the 'occasion giving rise to liability in this factual context'")(citing <u>Appalachian</u>, 863 N.E.2d at 1000.) "[I]t is now clear under New York Law [that] the injury imposing liability on the insured does not result until exposure occurs." <u>International Flavors</u>, 844 N.Y.S.2d at 263. In <u>Exxonmobil</u>, the New York State Appellate Division, First Department, held that "the manufacture and sale of plaintiff's two defective products did not

constitute a single occurrence." <u>Exxonmobil</u>, 855 N.Y.S.2d at 485. Instead, it was the installation of the product that created the exposure to the product, which, over time, caused the damage complained of. <u>Id.</u>

In the instant case, it was not the manufacture, sale or distribution of the plaintiff's contact lens solutions that caused injury. Rather, it was the exposure to the solutions that caused the injuries, and therefore, the exposure to the solutions manufactured and sold by B & L constitute the "incidents" giving rise to liability. Under the unfortunate events test, the court must now determine whether or not the incidents can be combined into a single occurrence, or whether each incident is a separate occurrence for purposes of the Lexington Policies.

As stated above, to determine whether or not several individual incidents or occurrences may be grouped together and considered to be a single occurrence for purposes of liability coverage, the court must determine whether or not there is a "close temporal and spatial relationship between the incidents giving rise to injury or loss, and whether the incidents can be viewed as part of the same causal continuum, without intervening agents or factors." <u>Appalachian</u>, 863 N.Y.S.2d at 747.

In the instant case, there is no dispute that the incidents giving rise to liability: i.e. exposure to the plaintiff's contact lens solutions, occurred in thousands of different locations, at

thousands of different times, as a result of different solutions manufactured at different times and in different locations. The record reveals that claimants come from several different states and countries, allege different types of injuries, and allege that the exposure to the plaintiff's products took place in various locations at various times over the course of several years. As a result, there is no close temporal and spatial relationship between the incidents giving rise to the alleged injuries, and there is no basis for holding that the incidents can be viewed as part of the same causal continuum, without intervening agents or factors. I therefore find that the ReNu claims do not arise from a single occurrence.

      B.    The ReNu Claims do not arise from multiple occurrences which may be grouped under the Lexington Policies.

Bausch & Lomb contends that even if the events giving rise to the ReNu claims can not be considered to have arisen out of a single occurrence, the events may be deemed to have arisen out of a single occurrence because the Lexington policies provide for the grouping of certain accidents, and consideration of those accidents as a single occurrence. Indeed, Bausch & Lomb argues that because the parties specifically chose to include a grouping provision in the definition of "occurrence" in the Lexington policies, the unfortunate events test is inapplicable, and the court must give deference to the parties' express and unambiguous agreement that in cases where bodily injury is alleged to have been caused by

exposure to an injurious condition or conditions, all such exposure would be deemed to have arisen out of a single occurrence. Bausch & Lomb contends that the language of the grouping provisions, both on its face, and as a matter law, supports its claim that the repeated or continuous exposure of all Bausch & Lomb consumers to its contact lens solutions may be grouped, and deemed a single occurrence.

It is uncontroverted that parties to an insurance policy may define the terms "accident" or "occurrence" in any way they see fit, and to provide for the grouping of accidents as a single occurrence if they so choose. <u>Appalachian</u>, 863 N.Y.S.2d at 747. And while Bausch & Lomb correctly asserts that the Lexington policies at issue do contain a grouping provision for repeated or continuous exposure to harmful conditions, Bausch and Lomb is incorrect when it argues that the grouping provision applies in this case.

The Lexington policies provide that all accidental repeated or continuous exposure to the same or substantially the same harmful conditions shall be considered as arising out of one occurrence. As stated by the Court of Appeals in <u>Appalachian</u>, the purpose of including the phrase "continuous or repeated exposure to conditions" as part of the definition of an occurrence was to "make clear that gradually occurring losses" in addition to the more quickly-occurring losses, more traditionally associated with

"accidents," would be covered so long as they were not intentional. Appalachian, 863 N.Y.S.2d at 748. By including a grouping provision that "[a]ll such exposure to substantially the same general conditions shall be considered as arising out of one Occurrence" (as found in the Lexington policies) the parties merely confirm that one individual's repeated or continuous exposure on multiple occasions to a harmful condition will not be treated as separate occurrences, but instead, will be deemed to be the result of one occurrence. See International Flavors, 844 N.Y.S.2d at 260 ("Fairly construed, the policy definition reflects the parties' intent to construe as a single occurrence the 'continuous or repeated exposure' of any one person to 'harmful conditions'"). Such grouping language also "reflects the intent to treat as a single occurrence the continuous or repeated exposure of multiple persons to 'harmful conditions' that result from a single accident." International Flavors, 844 N.Y.S.2d at 261. However, such language is not intended to group claims "where there is no single incident that can be identified as the event resulting in injury to the numerous claimants." Id.

In the instant case, as in the International Flavors case, there is no single accident that resulted in the users of Bausch and Lomb's contact lens solutions to be subjected to the same or substantially the same harmful conditions. As stated previously the solutions at issue were made by Bausch & Lomb at different

times, and in different locations.  The alleged injuries suffered by the claimants took place in separate locations across several continents, and at different times, and involved different types of infections, including bacterial or fungal infections.  As a result, it can not be said that the claimants were exposed to the same or substantially the same harmful conditions.  Rather, it was each individual's exposure to the solution, under conditions unique to each individual, that constituted the accident that caused the injury.  Because these exposures were separate and distinct, they cannot be combined under the grouping provision of the Lexington policies.

Bausch and Lomb additionally argues that the grouping language contained in the Lexington Policies has been recognized by the New York Court of Appeals in <u>Appalachian</u> to be precisely the type of language that unambiguously expresses the intent of the parties to group claims resulting from repeated or continuous exposure to harmful conditions.  Again, B & L is correct in stating that the <u>Appalachian</u> court did sanction the type of language found in the Lexington policies as language that is indicative of an intent to group certain claims.  However, as stated above, the fact that a grouping provision may allow some claims to be grouped does not mean that all claims may be grouped.  Indeed, as set forth above, the claims brought by the users of B & L's contact lens solutions are not subject to grouping, just as the claims in <u>International</u>

<u>Flavors</u> and <u>ExxonMobil</u> were not subject to grouping, despite the presence of a grouping clause. I therefore find that Bausch & Lomb has failed to establish that the accidents giving rise to the ReNu claims are subject to grouping under the grouping provision of the Lexington Policies.

IV.  <u>Remaining Claims</u>

For the reasons set forth above, I grant Lexington's motion to dismiss B & L's state law claim alleging deceptive business practices. I further grant defendant Lexington's motion seeking a declaration that Lexington is not obligated under the Lexington policies to provide a defense to each ReNu claim, and that each ReNu claim is subject to the retained limits and maintenance retentions as provided in the Lexington policies.

## CONCLUSION

For the reasons set forth above, I hereby grant defendant Lexington's motion for summary judgment in its entirety, and deny plaintiff Bausch and Lomb's cross-motion for partial summary judgment. Plaintiff's complaint is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED

                              S/Michael A. Telesca
                    _____
                         MICHAEL A. TELESCA
                    United States District Judge

Dated:    Rochester, New York
          December 28, 2009