MANDATE

10-0310-cv
Bausch & Lomb Inc. v. Lexington Ins. Co.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 11th day of March, two thousand eleven.

PRESENT:  REENA RAGGI,
          DEBRA ANN LIVINGSTON,
          DENNY CHIN,
                    *Circuit Judges*,
--------------------------------------------------------------------------
BAUSCH & LOMB INCORPORATED,
                    *Plaintiff-Appellant*,

          v.                                      No. 10-0310-cv

LEXINGTON INSURANCE COMPANY,
                    *Defendant-Appellee*.
--------------------------------------------------------------------------

APPEARING FOR APPELLANT:       GEORGE T. CONWAY III, Wachtell, Lipton, Rosen & Katz (John F. Savarese, Ben M. Germana, Adam P. Schleifer, Wachtell, Lipton, Rosen & Katz; Seth B. Schafler, Proskauer Rose LLP, *on the brief*), New York, New York.

APPEARING FOR APPELLEE:        LAWRENCE KLEIN (Andrew T. Houghton, Christopher J. Celentano, *on the brief*), Sedgwick, Detert, Moran & Arnold LLP, New York, New York.

MANDATE ISSUED ON 05/25/2011

Appeal from the United States District Court for the Western District of New York (Michael A. Telesca, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court entered on December 29, 2009, is AFFIRMED in part and VACATED in part, and the case is REMANDED to the district court for further proceedings consistent with this order.

Plaintiff Bausch & Lomb Incorporated ("B&L") appeals from an award of summary judgment entered in favor of defendant Lexington Insurance Company ("Lexington"), on B&L's claims for a declaration that Lexington was obligated to defend and indemnify it pursuant to three umbrella insurance policies in numerous actions brought by consumers of B&L's ReNu MoistureLoc saline solution.[1] We review a summary judgment ruling de novo, construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor. See Fabozzi v. Lexington Ins. Co., 601 F.3d 88, 90 (2d Cir. 2010); Havey v. Homebound Mortg., Inc., 547 F.3d 158, 163 (2d Cir. 2008). In applying these principles to this appeal, we assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision.

---

[1] Although similar complaints involving two different B&L saline solutions were filed, B&L does not here contend that those suits should be grouped with the MoistureLoc claims for coverage purposes. As a result, we do not consider those claims.

2

1.    <u>Duty to Indemnify</u>

B&L submits that the district court erred in concluding, as a matter of law, that the policies did not group consumer exposures to MoistureLoc into one occurrence. We are not persuaded.

Under New York law, contracting parties may define "occurrence" in a manner that groups "certain types of similar claims." <u>Appalachian Ins. Co. v. Gen. Elec. Co.</u>, 8 N.Y.3d 162, 173 & n.3, 831 N.Y.S.2d 742, 748 & n.3 (2007); <u>see also</u> <u>International Flavors & Fragrances, Inc. v. Royal Ins. Co. of Am.</u>, 46 A.D.3d 224, 229, 844 N.Y.S.2d 257, 261 (1st Dep't 2007). But, if the "specific aggregation-of-claims provision" does not "precisely identify[] the operative incident or occasion giving rise to liability," New York courts apply the "unfortunate events test." <u>ExxonMobil Corp. v. Certain Underwriters at Lloyd's, London</u>, 50 A.D.3d 434, 435, 855 N.Y.S.2d 484, 485 (1st Dep't 2008) (internal quotation marks omitted); <u>see also</u> <u>Mt. McKinley Inc. Co. v. Corning Inc.</u>, 28 Misc.3d 893, 903, 903 N.Y.S.2d 709, 717 (Sup. Ct. N.Y. Cnty. 2010) (requiring specific grouping provision "before applying a test other than the unfortunate-event test"). The grouping provision at issue states:

> Occurrence means . . . an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general harmful conditions will be deemed to arise out of one Occurrence.

2005 Commercial Umbrella Liability Policy at 21; 2006 Commercial Umbrella Liability Policy at 22.[2]

B&L contends that the second sentence of this definition specifically groups consumer injuries arising from the same general harmful condition of exposure to MoistureLoc. We disagree. Nothing in that grouping provision "precisely identif[ies]" the operative incident as exposure to a particular product. See ExxonMobil Corp. v. Certain Underwriters at Lloyd's, London, 50 A.D.3d at 435, 855 N.Y.S.2d at 485 (noting that parties intending to "aggregate all claims resulting from the manufacture" of product may "rewrite the definition of 'occurrence'"); see also Appalachian Ins. Co. v. Gen. Elec. Co., 8 N.Y.3d at 173, 831 N.Y.S.2d at 748 (noting that parties may define occurrence to adopt "sole-proximate-cause" or other model). Indeed, New York courts appear to interpret such a grouping provision as at most combining exposures emanating from the same location at a substantially similar time. See Ramirez v. Allstate Ins. Co., 26 A.D.3d 266, 266, 811 N.Y.S.2d 19, 20 (1st Dep't 2006) (interpreting similar provision as grouping infants' "exposure to the same lead hazard in the same apartment"); Mt. McKinley Ins. Co. v. Corning Inc., 28 Misc.3d at 907-09, 903 N.Y.S.2d at 720-22 (noting cases interpreting similar provision as grouping incidents arising at same place and roughly same time); cf. Metropolitan Life Ins. Co. v. Aetna Cas. & Sur. Co., 255 Conn. 295, 308-09, 765 A.2d 891, 898 (2001) (interpreting similar provision as

---

[2] The 2004 policy provision states that "[o]ccurrence means . . . an accident, including continuous or repeated exposure to conditions . . . . All such exposure to substantially the same general conditions shall be considered as arising out of one Occurrence." 2004 Commercial Umbrella Policy Form at 5. The parties do not suggest that the difference in language is material to the instant issues.

grouping claims arising from exposures at "the same place at approximately the same time").[3] Following this standard, the MoistureLoc incidents do not constitute exposures to the same general conditions because they involve differing times, locations, and circumstances. As a result, the grouping provision does not apply, and we must use the unfortunate events test. See ExxonMobil Corp. v. Certain Underwriters at Lloyd's, London, 50 A.D.3d at 435, 855 N.Y.S.2d at 485.[4]

---

[3] B&L's reliance on In re Prudential Lines Inc., 158 F.3d 65 (2d Cir. 1998) is misplaced. There, the insurance contract did not contain the grouping provision at issue here. Id. at 76. We nevertheless acknowledged in a footnote that cases in other states had interpreted similar "arguably unifying" language as grouping certain occurrences. Id. at 82 n.9. We had no occasion then to determine whether New York courts interpreted the language as unifying or, if so, which occurrences might be grouped as exposures to substantially the same general conditions.

B&L also cites to Champion Int'l Corp. v. Cont'l Cas. Co., 546 F.2d 502 (2d Cir. 1976), in support of its argument. Our role in this case, however, "is to construe and apply state law as we believe the state's highest court would." City of Johnstown v. Bankers Standard Ins. Co., 877 F.2d 1146, 1153 (2d Cir. 1989). But where the highest state court has not spoken on the issue, we look to the decisions of lower state courts and "the language of other jurisdictions on the same issue and other sources the state's highest court might rely upon in deciding the question." DiBella v. Hopkins, 403 F.3d 102, 112 (2d Cir. 2005).

New York state cases, as well as those from other jurisdictions cited approvingly by New York courts, have relied upon then-District Judge Newman's dissent as a persuasive interpretation of grouping clauses similar to those found in B&L's insurance agreement. See, e.g., Mt. McKinley Ins. Co. v. Corning Inc., 28 Misc.3d at 909, 903 N.Y.S.2d at 722; ExxonMobil Corp. v. Certain Underwriters at Lloyd's, London, 2007 N.Y. Slip Op 51138, at *9 (Sup. Ct. N.Y. Cnty. June 5, 2007), aff'd, 50 A.D.3d at 434, 855 N.Y.S.2d at 484; see also Fina, Inc. v. Travelers Indem. Co., 184 F. Supp. 2d 547, 552 (N.D. Tex. 2002); Metropolitan Life Ins. Co. v. Aetna Cas. & Sur. Co., 255 Conn. at 309-11, 765 A.2d at 899-900. Accordingly, we rely on these cases to construe the grouping clause at issue here.

[4] Nothing in the policies' other provisions compels a different result. Contrary to B&L's contention, a 2006 amendment changing the prescription maintenance retention fee to per-claimant is not rendered meaningless by Lexington's interpretation of the grouping provision. The grouping language is not always equivalent to a per-claimant approach even if the MoistureLoc claimants are separate. See Appalachian Ins. Co. v. Gen. Elec. Co., 8

Under the unfortunate events test, the incident giving rise to liability is exposure to the defective product, not the manufacture or sale of the product.  See Appalachian Ins. Co. v. Gen. Elec. Co., 8 N.Y.3d at 173, 831 N.Y.S.2d at 748; International Flavors & Fragrances, Inc. v. Royal Ins. Co. of Am., 46 A.D.3d at 231, 844 N.Y.S.2d at 262.  To determine if multiple incidents arise from a single occurrence or multiple occurrences, the unfortunate events test analyzes "whether there is a close temporal and spatial relationship between" or "the same causal continuum" for the incidents giving rise to the injuries.  Appalachian Ins. Co. v. Gen. Elec. Co., 8 N.Y.3d at 171-72, 831 N.Y.S.2d at 747; see also Hartford Accident & Indem. Co. v. Wesolowski, 33 N.Y.2d 169, 173-74, 350 N.Y.S.2d 895, 899-900 (1973); Arthur A. Johnson Corp. v. Indem. Ins. Co. of N. Am., 7 N.Y.2d 222, 228-30, 196 N.Y.S.2d 678, 683-84 (1959).  Like the district court, we conclude that the MoistureLoc incidents share few commonalities, differing in "when and where exposure occurred," how long or how often plaintiffs used MoistureLoc, and what intervening agents or factors existed.  See Appalachian Ins. Co. v. Gen. Elec. Co., 8 N.Y.3d at 174, 831 N.Y.S.2d at 749.  Accordingly, B&L was not entitled to indemnification prior to exhausting the aggregate Retained Limits.

---

N.Y.3d at 174, 831 N.Y.S.2d at 749.  Finally, if, as B&L asserts, the primary purpose of obtaining the policies was to provide coverage for products liability, the parties could have specified that all exposures to a particular product constitute one occurrence.  See ExxonMobil Corp. v. Certain Underwriters at Lloyd's, London, 50 A.D.3d at 435, 855 N.Y.S.2d at 485.

2.    Duty to Defend

B&L contends that even if, as a matter of law, the MoistureLoc exposures are not one occurrence, Lexington bore a duty to defend because (1) B&L's interpretation of the occurrence definition was rational and (2) B&L's exhaustion of the $4 million aggregate Retained Limits triggered the duty. We reject the former proposition and believe the policies are ambiguous with respect to the latter.

a.    Rational Interpretation

An insurer's obligation to provide a defense is separate from and broader than its indemnification duty, see Allianz Ins. Co. v. Lerner, 416 F.3d 109, 115 (2d Cir. 2005); Automobile Ins. Co. of Hartford v. Cook, 7 N.Y.3d 131, 137, 818 N.Y.S.2d 176, 179 (2006), arising when the "claims asserted against the insured may rationally be said to fall within policy coverage," Hugo Boss Fashions, Inc. v. Fed. Ins. Co., 252 F.3d 608, 620 (2d Cir. 2001) (internal brackets omitted) (quoting Seaboard Sur. Co. v. Gillete Co., 64 N.Y.2d 304, 310, 486 N.Y.S.2d 873, 876 (1984)). Nevertheless, we are not persuaded that B&L's arguably rational interpretation of the grouping language compels a duty to defend. The breadth of the defense duty "arises out of" the need to "provide a defense against even wholly frivolous" claims if "the allegations fall within the policy's coverage." Commercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc., 822 F.2d 267, 273 (2d Cir. 1987); see Automobile Ins. Co. of Hartford v. Cook, 7 N.Y.3d at 137, 818 N.Y.S.2d at 179 (noting that defense duty arises when complaint's allegations "suggest a reasonable possibility of coverage" (internal quotation marks and ellipsis omitted)). Lexington does not here contest

that the MoistureLoc allegations, no matter how frivolous, are covered claims under the policies.  Rather, the controversy is whether B&L has satisfied a condition precedent to all of Lexington's duties under the policies: exhaustion of the Retained Limits.  Under New York law, an insurer has no duty to defend if conditions precedent are not met.  See Commercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc., 822 F.2d at 272-73 (no separate defense duty obtained when insured failed to provide required notification of occurrence); American Home Assurance Co. v. Int'l Ins. Co., 90 N.Y.2d 433, 440-43, 661 N.Y.S.2d 584, 586-88 (1997) (failure to provide notice to excess insurer relieved insurer of coverage); Sport Rock Int'l, Inc. v. Am. Cas. Co., 65 A.D.3d 12, 21-22, 878 N.Y.S.2d 339, 347 (1st Dep't 2009) (excess insurer's defense duty arose only when primary insurance exhausted).[5]  Thus, Lexington has no duty to defend MoistureLoc claims for which B&L did not satisfy the Retained Limits.

---

[5] BP Air Conditioning Corp. v. One Beacon Insurance Group, 8 N.Y.3d 708, 840 N.Y.S.2d 302 (2007), and Allianz Insurance Co. v. Lerner, 416 F.3d 109, on which B&L relies, are not to the contrary.  In BP Air Conditioning, the New York Court of Appeals concluded that "the standard for determining whether an additional named insured is entitled to a defense is the same" as for a named insured when the plaintiff alleged that the additional insured's injurious actions arose out of its operations for the insured, as required by the policy.  BP Air Conditioning Corp. v. One Beacon Ins. Grp., 8 N.Y.3d at 715, 840 N.Y.S.2d at 306.  Allianz Insurance analyzed whether an insurer bore a duty to defend plaintiff's contract claim when the policy insured against suits "as the result of a covered auto accident."  Allianz Ins. Co. v. Lerner, 416 F.3d at 116-17 (emphasis omitted).  Thus, the issue in both cases was whether the plaintiffs' allegations fell within the policy's coverage, not whether a condition precedent had been satisfied.  In contrast, there is no question here as to whether the underlying allegations fall with the scope of coverage.

b.    <u>Aggregate Retained Limit</u>

After reviewing the parties' requested supplemental briefs, we conclude that B&L did not forfeit its argument that exhaustion of the $4 million aggregate Retained Limits triggers Lexington's duty to defend irrespective of the per occurrence maintenance retention payments. Lexington, the party moving to dismiss, explicitly argued to the district court that it never had a duty to defend even after B&L exhausted the aggregate Retained Limits because each occurrence required a maintenance retention paid only through judgments or settlements. Although a footnote in B&L's response requested that the district court alternatively award it defense costs "with respect to claims settled in <u>excess of the retentions</u>," B&L Summ. J. Br. at 36 n.35, <u>Bausch & Lomb Inc. v. Lexington Ins. Co.</u>, 679 F. Supp. 2d 345 (W.D.N.Y. 2009) (No. 08-CV-6260T) (emphasis added), it consistently urged that Lexington's interpretation read the duty to defend out of the contract, requesting a declaration that Lexington owed it a duty to defend "upon exhaustion of the underlying <u>retained limits</u>," <u>id.</u> at 2, 17-19, 39 (emphasis added). Tellingly, Lexington never contended on appeal that B&L forfeited its argument, presumably because Lexington itself raised these issues below. As a result, the matter was sufficiently presented to the district court.

B&L contends that the policies unambiguously required Lexington to defend after exhaustion of the aggregate Retained Limits regardless of the maintenance retentions because the retentions, which apply only "following erosion of [the] aggregate," are not listed Retained Limits that must be satisfied before the duty to defend arises. 2004 Retained Limit Amendatory Endorsement at 2, 4; 2005 Retained Limit Amendatory Endorsement at 2, 5; 2006 Retained Limit Amendatory Endorsement at 2, 5. Although B&L's interpretation is

reasonable, we conclude that the policies are ambiguous because they "suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." See Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 914 (2d Cir. 2010) (internal quotation marks omitted).

Under the policies' defense provisions, the duty to defend arises when "the applicable limits listed in the Schedule of Retained Limits have been exhausted." 2004 Retained Limit Amendatory Endorsement at 2; 2005 Retained Limit Amendatory Endorsement at 2; 2006 Retained Limit Amendatory Endorsement at 2. Thus, whether Lexington's duty to defend arises upon exhaustion of the aggregate Retained Limits turns on whether the maintenance retentions are "limits listed in the Schedule of Retained Limits" under the policies.

On the one hand, the maintenance retentions are not called "Retained Limits." They are given a special name – "maintenance retention" – which suggests that they are not a "Retained Limit," and thus not a limit listed in the Schedule of Retained Limits within the meaning of the defense provisions. The fact that the "Retained Limits" are "[s]ubject to" the maintenance retentions further suggests that a "Retained Limit" and a "maintenance retention" are distinct. 2004 Retained Limit Amendatory Endorsement at 4; 2005 Retained Limit Amendatory Endorsement at 5; 2006 Retained Limit Amendatory Endorsement at 5.

On the other hand, the maintenance retention appears under the heading "Schedule of Retained Limits," 2004 Retained Limit Amendatory Endorsement at 4; 2005 Retained Limit Amendatory Endorsement at 5; 2006 Retained Limit Amendatory Endorsement at 5,

suggesting that it is an applicable limit that must be exhausted before Lexington's duty to defend arises. Moreover, one could reasonably argue that Lexington would not have agreed to defend suits for which it indisputably had no indemnification obligation.

We note that the record contains no evidence of the parties' intent with respect to the purpose of the limits and retentions, and that the summary judgment motion was decided below before the completion of discovery. As a result, we conclude that remand is appropriate for discovery on this issue. See Chapman v. N.Y. State Div. for Youth, 546 F.3d 230, 237 (2d Cir. 2008) (noting that remand appropriate for "trial court to consider and weigh extrinsic evidence to determine what the parties intended" when contract ambiguous (internal quotation marks omitted)).

We have considered B&L's remaining arguments on appeal and conclude that they are without merit. For the foregoing reasons, the December 29, 2009 judgment of the district court is AFFIRMED in part and VACATED in part, and the case is REMANDED to the district court for further proceedings consistent with this order.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court



A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

11